# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW S. LOVELL, | ) | I.D. No. 2107001690 |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Date Submitted: September 9, 2022
Date Decided: September 28, 2022

*Upon Defendant's Motion to Suppress.* **DENIED, in part, and GRANTED, in part**.

## ORDER

Dominic Carrera, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Richard B. Ferrara, Esquire, Wilmington, Delaware, Attorney for Defendant.

**SCOTT, J.**

1

## Introduction

Before the Court is Defendant Andrew S. Lovell's ("Defendant") Motion to Suppress, brought by counsel. Defendant argues there was no probable cause for the warrantless arrest of Defendant and thus any evidence seized as a result of the unlawful arrest of Defendant must be suppressed, any statements made by defendant should be suppressed because they were a result of a pre-*Miranda*, custodial interrogation, and Defendant's blood sample should be suppressed because it was obtained without consent or a proper warrant. The State, in turn, argues *Miranda* does not apply to Defendant's statements made after his handcuffs were removed because he was free to move around the accident scene, and probable cause existed for the warrant therefore, the evidence should not be suppressed.  The Court has reviewed the motion and the State's response and held a suppression hearing. For the following reasons, the Defendant's Motion is **DENIED, in part, and GRANTED, in part.**

## Findings of Fact

On July 4, 2021, at approximately 6:46 A.M., Officers of the Delaware State Police Department responded to the intersection of Polly Drummond Hill Road and Capitol Trial Road after a report of an alleged accident with injuries. Upon arrival, the first officer ("First Officer") on the scene noticed two vehicles in the southbound lanes of Polly Drummond Hill Road, just north of the intersection. Witnesses on the

2

scene informed First Officer that one of the drivers involved in the collision had fled to a nearby cemetery, approximately 50 yards away and gave a description of the clothing the driver was wearing. First Officer searched the cemetery, after not finding the suspect, First Officer returned to his vehicle where Defendant approached First Officer from the direction of the cemetery and uttered an unidentifiable word. Seeing that the Defendant's clothes matched the description provided to him by eyewitnesses and the direction Defendant came from, First Officer immediately tells Defendant to turn around and handcuffs Defendant.

Upon handcuffing Defendant, First Officer notices Defendant's breath smells of alcohol, along with his clothing. First Officer observes that Defendant's eyes were bloodshot and watery. While bringing the Defendant back to the scene of the collision, First Officer asks Defendant several questions about the accident and then turns Defendant over to his partner so First Officer can continue his investigation of the accident scene. Through his investigation of the accident scene, First Officer observed several bottles of alcohol in the Defendant's vehicle.

Defendant's handcuffs were removed, and he was taken to the front of First Officer's vehicle so a DUI investigation could be performed. First Officer noticed Defendant's speech was slurred. Defendant made the following statements: When asked why he was up in the cemetery, Defendant responded, "Because Charlie. . . I almost killed the guy." When asked who Charlie was, Defendant responded, "the

3

guy who was driving the truck." When asked if Defendant knew Charlie, Defendant responded, "No I was just saying like I'm not going to.." When asked what Defendant meant when he said he almost killed a guy, Defendant responded "You can see it look at his [expletive] truck." When First Officer accuses Defendant of hitting the victim, Defendant responded, "I know, but what I'm saying is I'm…" When First Officer accuses Defendant of walking up to the cemetery with the victim still in his truck, Defendant responded, "No, no I got him out of the car." When First Officer stated he did not hear Defendant got the victim out of the car from eyewitnesses, Defendant responded, "I got him out, I unfolded his seatbelt." When asked to perform field sobriety testing, Defendant refused all testing including a portable breathalyzer at the scene. Defendant was subsequently arrested for suspicion of DUI.

First Officer applied for a search warrant to obtain Defendant's blood, which contained an error regarding the time Defendant said his last drink was. First Officer reported in the warrant that Defendant said his last alcoholic beverage was at 5 A.M., however, Defendant stated is last alcoholic beverage was not at 5 A.M. the morning of the accident but was at 5 P.M. the night before. The blood warrant was approved, and Defendant was subsequently indicted and changed with DUI, Vehicular Assault Second Degree, leaving the scene of an accident-causing injury and various other traffic offenses.

Defendant filed this Motion challenging the constitutionality of his detention, arrest, and blood warrant. The Court heard argument on this Motion on September 9, 2022.

## Discussion

### *Statements made by Defendant*

Law enforcement officials may not subject an individual to custodial interrogation unless he is advised of specific rights protective of his privilege against compelling self-incrimination guaranteed by the Fifth Amendment.[1] If the police take a suspect into custody and interrogate him without advising him of his fifth amendment rights, his answers cannot be introduced into evidence at a subsequent trial to establish the suspect's guilt.[2] A person is in custody for *Miranda* purposes when there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.[3] The burden of proof is on the State to demonstrate that the Defendant was advised of his *Miranda* rights and has knowingly and intelligently waived those rights.[4]

Defendant was in custody for purposes of *Miranda* subsequent to being placed in handcuffs, because there was a restraint on Defendant's freedom of movement to

---

[1] *DeJesus v. State*, 655 A.2d 1180, 1189 (Del.1995) citing *Miranda v. Arizona*, 384 U.S. 486 (1966).
[2] *Id.* at 1190.
[3] *Id.*
[4] *State v. DeAngelo*, 2000 WL 305332, *5 (Del.Super.).

the degree associated with a formal arrest. The State concedes the statements made while Defendant was handcuffs are inadmissible. The issue before the Court is whether the statements made after his handcuffs were taken off are admissible. Statements were made regarding the circumstances of the accident elicited by First Officer, and statements were made to refuse the field sobriety tests.

Defendant's statements refusing to submit to the field sobriety tests are admissible "for any relevant purpose, including to show consciousness of guilt."[5] Therefore, Defendant's request to suppress statements regarding his refusal is **DENIED.**

However, Defendant's statements elicited about the accident are not admissible because Defendant was still in custody for the purposes of *Miranda*. In *Terry v. Ohio*, the United States Supreme Court held that a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty" of the individual.[6] Our Supreme Court has recognized and advised the refined standard in *Michigan v. Chesternut*,[7] calling for this Court to focus not on whether a reasonable person would feel free to leave but rather on whether the officer's conduct would "have communicated to a reasonable person that he was not

---

[5] *Church v. State*, 2010 WL 5342963, at *2 (Del. Dec. 22, 2010).
[6]  392 U.S. 1, 19 n. 16 (1968).
[7] 486 U.S. 567 (1988).

at liberty to ignore the police presence and go about his business."[8] In relation to *Miranda*, this means when an officer's conduct would communicate to a reasonable person that he does not have the freedom to ignore the police and continue to do what he pleases, such as leaving, then *Miranda* warning are necessary. Even though the handcuffs were removed from Defendant, no reasonable person in Defendant's position would believe they were free to ignore police presence and go about their business as he was ordered to the front of the vehicle to answer questions and perform field sobriety tests. Therefore, Defendant was subjected to a custodial interrogation and his statements made regarding the accident are required to be suppressed.

The State argued Defendant statements were not a consequence of a custodial interrogation because the Defendant was not in custody when the handcuffs were taken off as he was free to move about the accident scene. However, Federal Courts have found that a defendant is no longer in custody when handcuffs are removed if the defendant is informed by law enforcement that they are free to leave or they are not under arrest and advised of their constitutional rights.[9] Therefore, if a defendant

---

[8] *Id.* at 569, 108 S.Ct. 1975; see also *Jones v. State*, 745 A.2d 856, 862 (Del. 1999); *Quarles v. State*, Del.Supr., 696 A.2d 1334, 1337 (1997); *Robertson v. State*, Del.Supr., 596 A.2d 1345, 1351 (1991).

[9] In *U.S. v. Hyer*, police officers executed a search warrant of defendant's apartment and handcuffed him until the residence was secure. Once secure, defendant was uncuffed and was told he was not under arrest and advised him of his constitutional rights. Defendant indicated he understood his constitutional

is told they may leave or are told they are not under arrest and advised of their constitutional rights when the handcuffs are removed, any statement made would not implicate *Miranda*. This set of facts is not present here. In this case, Defendant was uncuffed and told to go to the front of the vehicle so First Officer could conduct field sobriety tests. First Officer, nor any other officer on the scene, gave the Defendant his *Miranda* warnings before interrogating him (asking the Defendant about the accident). The State has not carried its burden of proof in demonstrating that the Defendant was advised of his *Miranda* warnings before the statements regarding the accident were made. Consequently, Defendant's request to suppress statements elicited by First Officer is **GRANTED.**

### *Warrant Error*

The State and defense counsel have conceded the remedy for the error in First Officer reporting the time Defendant said he had his last drink is for the Court to eliminate the error and determine if probable cause exists within the four corners of

---

rights and then made oral statements in response to police questioning. The court found the defendant was not in custody, so the protections of *Miranda* did not attach. *United States v. Hyer*, 2010 WL 2160911, at *15-17 (E.D. Mo. Apr. 29, 2010), report and recommendation adopted, 2010 WL 2160908 (E.D. Mo. May 28, 2010). In *U.S. v. Laws*, while a search warrant of defendant's mother's home was executed by police, defendant was handcuffed. Defendant was subsequently uncuffed and told he was free to leave by a law enforcement officer because defendant proceeded to answer the questions of the officer. The court found defendant was not in custody when the statements were made, therefore the motion to suppress the statements was denied. The appellate court affirmed the ruling. United States v. L., 819 F.3d 388, 395-96 (8th Cir. 2016).

the warrant. With elimination of Defendant's statement about when he last had an alcoholic beverage, the affidavit establishes Defendant's vehicle was involved in the accident, Defendant fled the scene of the accident, his clothes and breath smelled strongly of alcohol, his eyes were bloodshot and watery, and there were alcohol bottles found in the vehicle. Considering all these factors, without any consideration of when Defendant said he had his last drink, this Court finds there was probable cause to support granting the blood warrant. Therefore, the request to suppress the blood results is **DENIED.**

For the aforementioned reasons, Defendant's Motion to Suppress is hereby **DENIED, in part, and GRANTED, in part.**

/s/ Calvin L. Scott
**Judge Calvin L. Scott, Jr.**